IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

S.U.,

        Plaintiff,

v.                                CIVIL ACTION NO. 2:20-cv-00450

MATTHEW WICKERT,

        Defendant.

**PROPOSED FINDINGS & RECOMMENDATION**

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 5.) Before this Court is Defendant Matthew Wickert's ("Defendant") motion to dismiss. (ECF No. 24.) For the reasons explained more fully herein, the undersigned respectfully **RECOMMENDS** that the motion be **GRANTED** and this action be **DISMISSED**.

I.    BACKGROUND

Plaintiff S.U. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against Defendant in his official capacity as the West Virginia State Registrar, claiming that West Virginia Code § 16-5-10(e), which provides generally that a woman who gives birth to a child is presumed to be the child's mother, violates the Fourteenth Amendment to the federal Constitution. (ECF No. 1.) Plaintiff alleges that he is "the biological parent" of three minor children who "were conceived via in-vitro fertilization pursuant to a gestational surrogacy contract." (*Id.* at 1.) He avers that pursuant to § 16-5-10(e), the

gestational surrogate was "identified" as the children's "legal mother" on their birth certificates, "and the surrogate then sought, and was granted, physical and legal custody of Plaintiff's children against his wishes." (*Id.* at 5.)

According to Plaintiff, after the birth of the first child, he filed a petition in state circuit court "requesting a court order removing the gestational surrogate from [the] birth certificate and ordering the birthing hospital not to place the surrogate's name on the birth certificates of" the other two children, a set of twins the surrogate was carrying at the time. (*Id.* at 6.) He alleges that the twins were born prematurely and he was not informed of the birth, and the children's birth certificates were filed before he was able to obtain the court order he requested. (*Id.*) Plaintiff further alleges that the petition was later transferred to family court and converted into a petition for "custody allocation," and the family court "granted legal and physical custody of Plaintiff's biological children to their gestational surrogate . . . due to" § 16-5-10(e). (*Id.* at 6–7.) He avers that he "has continued to fight for his children in state court," but "the State of West Virginia will not recognize [his] constitutional rights and relies simply upon . . . § 16-5-10(e)." (*Id.* at 7.) He explains that he "requested the state circuit court to permit his wife . . . to adopt his children," but the court dismissed his petition "without a hearing" because it held that the adoption required the consent of the gestational surrogate as the children's legal mother. (*Id.* at 9.)

Plaintiff brings both equal protection and substantive due process challenges to § 16-5-10(e). (*Id.* at 15–17.) He requests that this Court declare the statute unconstitutional and enjoin Defendant from enforcing it "and any other laws that permit a gestational surrogate to be a legal parent in contrast to the biological parent's wishes." (*Id.* at 18.) He further asks this Court to "order Defendant to amend the birth certificates

2

of [the three children] to reflect only Plaintiff's name" and remove that of the gestational surrogate, to void the orders in the family court action awarding custody to the surrogate, and "give permission for law enforcement to assist Plaintiff with securing physical custody of his children, if necessary." (*Id.* at 19.) He also requests attorney's fees "for all court proceedings." (*Id.*)

Defendant filed his motion to dismiss on August 24, 2020. (ECF No. 24.) Plaintiff timely responded (ECF No. 27), Defendant timely replied (ECF No. 37), and Plaintiff filed a timely sur-reply (ECF No. 38). As such, the motion to dismiss (ECF No. 24) is fully briefed and ready for resolution.[1]

## II. LEGAL STANDARD

"[A] defendant may challenge [this Court's] subject matter jurisdiction [through a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss] in one of two ways." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). A "facial" challenge to jurisdiction attacks the complaint's allegations of jurisdictional facts. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). In that manner, it is similar to a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, in that "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. A "factual" challenge, on the other hand, involves an assertion "that the jurisdictional allegations of the complaint [are] not true." *24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 629 (4th Cir. 2016)

---

[1] Defendant requested a hearing on this motion; however, in light of the extensive briefing and the arguments already presented to the undersigned at a status conference held on September 10, 2020 (*see* ECF No. 36), the undersigned does not believe that further oral argument on the issues raised in the motion is necessary prior to rendering a decision.

3

(quoting *Adams*, 697 F.2d at 1219). When ruling on a factual challenge, "[t]here is no presumption of truth," and this Court "may . . . go beyond the allegations of the complaint and hold an evidentiary hearing to determine if there are facts to support the jurisdictional allegations." *Id.* (internal quotation marks omitted). Defendant's challenge appears to be facial because he relies on the facts alleged in Plaintiff's complaint.

III.   ANALYSIS

In addition to other arguments made in his motion to dismiss, Defendant contends that this action is barred by the *Rooker–Feldman* doctrine because it "seek[s] a rehearing of matters already decided in Family Court." (ECF No. 25 at 2–3.) Because that doctrine is jurisdictional, this Court must address its application "before proceeding further in [the] analysis." *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002). The *Rooker–Feldman* doctrine is "a corollary" to 28 U.S.C. § 1257(a), which provides that only the United States Supreme Court may "review state court decisions." *Adkins v. Rumsfeld*, 464 F.3d 456, 463 (4th Cir. 2006); *see D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The doctrine is implicated when "a party losing in state court . . . seek[s] what in substance would be appellate review of the state judgment in a United States district court." *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) (internal quotation marks omitted); *see Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam) ("[U]nder . . . the *Rooker–Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments."). It "applies . . . when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision." *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir.

4

2006); *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005) ("In [*Rooker* and *Feldman*], the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.").

At its core, Plaintiff's complaint purports to mount a constitutional challenge to West Virginia Code § 16-5-10(e). (ECF No. 1.) This "general attack on the constitutionality" of that statute, which does not itself "require review of a judicial decision in a particular case," does not run afoul of the principles the *Rooker–Feldman* doctrine aims to uphold. *Feldman*, 460 U.S. at 487; *see Exxon Mobil Corp.*, 544 U.S. at 286. Therefore, the undersigned **FINDS** that the *Rooker–Feldman* doctrine does not preclude this Court from exercising subject matter jurisdiction over Plaintiff's claims that § 16-5-10(e) violates his equal protection and substantive due process rights. It does, however, prohibit this Court from revisiting the West Virginia state courts' application of that statute in the action Plaintiff filed there and from voiding the family court's orders, as Plaintiff requests. (ECF No. 1 at 19.)

To pursue his constitutional challenge to § 16-5-10(e), Plaintiff must nonetheless "demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). Whether a plaintiff has standing to bring his claims "is a threshold jurisdictional question." *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017) (quoting *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001)).[2] "To satisfy the 'irreducible constitutional minimum of

---

[2] Although Defendant has not argued in his motion to dismiss that Plaintiff lacks standing to pursue this action (*see* ECF No. 25), this Court is obligated to "address [standing] *sua sponte*," as it relates to this Court's power to hear the case. *Burch v. Murphy*, No. 2:17-cv-03311, 2020 WL 1307214, at *3 (S.D.W. Va.

standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"  *Deal v. Mercer Cty. Bd. of Educ.*, 911 F.3d 183, 187 (4th Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)) (alterations omitted). Plaintiff alleges that § 16-5-10(e)'s presumption that the woman who gives birth to a child should be listed as the child's mother on the birth certificate has deprived him of his rights "to have the custody, control, and care of [his] own children and have society accord [his] parentage and family the same respect and dignity enjoyed by other biological parents and families" and that Defendant caused that injury by applying that presumption to identify "a gestational surrogate as the legal mother" of his children on their birth certificates.  (ECF No. 1 at 1–2, 17–18.)  Even assuming that these allegations are sufficient to demonstrate the first two constitutional standing requirements, Plaintiff cannot establish the third—namely, that this Court's ruling would relieve his alleged injury.

"To satisfy the redressability element of standing, a plaintiff must show that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Deal*, 911 F.3d at 189 (internal quotation marks omitted).  An injury is redressable if the plaintiff "personally would benefit in a tangible way from the court's intervention."  *Id.* (quoting *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018)).  In other words, he "must show that the court has the power to grant [his] requested relief, and that such relief would redress [his] injury."  *Buscemi v. Bell*, 964 F.3d 252, 259 (4th Cir. 2020) (citing *K.C. ex rel. Africa H. v. Shipman*, 716 F.3d 107, 116–17 (4th Cir. 2013)).  He cannot do so here.

---

Mar. 18, 2020) (citing *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005)).

Plaintiff first requests that this Court "enter a declaratory judgment stating that [§ 16-5-10(e)] and any other West Virginia law that can be construed to give a gestational surrogate rights of a legal parent against the wishes of the biological parent" are unconstitutional. (ECF No. 1 at 18.) But "[b]y itself, a declaratory judgment cannot be the redress that satisfies the third standing prong." *Comite de Apoyo a los Trabajadores Agricolas (CATA) v. U.S. Dep't of Labor*, 995 F.2d 510, 513 (4th Cir. 1993). Instead, Plaintiff "must identify some further concrete relief that will likely result from the declaratory judgment." *Id.*

He also requests "a preliminary and permanent injunction enjoining enforcement or application of [§ 16-5-10(e)] and any other laws that permit a gestational surrogate to be a legal parent in contrast to the biological parent's wishes." (ECF No. 1 at 18.) Even if this Court were to enjoin Defendant from applying § 16-5-10(e), however, the injunction would provide no relief to Plaintiff. Injunctive relief operates prospectively from the time of its issuance. *Am. Steel Foundries v. Tri-City Cent. Trades Council*, 257 U.S. 184, 201 (1921); *Fleming v. Nat'l Bank of Commerce of Charleston*, 41 F. Supp. 833, 835 (S.D.W. Va. 1941) ("The purpose of an injunction is to deter a defendant from engaging in the prohibited acts and not to punish him for past conduct."). The statute by its terms limits the presumption that "the woman who gives birth to the child is . . . the mother" to "the purposes of birth registration." W. Va. Code § 16-5-10(e). But Plaintiff alleges that his children's birth certificates have already been issued (ECF No. 1 at 6), so an injunction preventing Defendant from applying the presumption to future birth registration records would not alter those of his children.

Of course, Plaintiff has also requested that this Court "order Defendant to amend [his children's] birth certificates . . . to reflect only Plaintiff's name." (*Id.* at 19.) He has

7

not established that this Court has the authority to do so, however. Under West Virginia law, a birth certificate "may be amended only in accordance with the provisions of [West Virginia Code chapter 16, article 5] or legislative rule." W. Va. Code § 16-5-25(a). The West Virginia Supreme Court of Appeals has interpreted this language to mean that a "statutory code section or legislative rule" must "expressly extend[]" the power to make the specific change to a vital record that the plaintiff requests to the court considering the request. In re *G.M.*, No. 19-0948, 2020 WL 3408589, at *3 (W. Va. June 18, 2020). Plaintiff has not pointed to any statute or legislative rule that would permit this Court— or any other—to direct that Plaintiff's children's birth certificates be modified in the manner he requests. As such, § 16-5-25(a), as construed by the West Virginia Supreme Court of Appeals, would appear to foreclose the amendment.

In addition, Plaintiff asks this Court to void the state court orders awarding custody of his children to the gestational surrogate. (ECF No. 1 at 19.) The *Rooker–Feldman* doctrine leaves this Court without jurisdiction to do so. *Shayne v. Lampl*, No. 8:19-cv-20-BHH, 2019 WL 421907, at *3 (D.S.C. Feb. 4, 2019). And to the extent that Plaintiff's request for this Court to "give permission for law enforcement to assist [him] with securing physical custody of his children" (ECF No. 1 at 19) is a request for this Court to award custody of the children to Plaintiff, this Court cannot do that, either. *Cantor v. Cohen*, 442 F.3d 196, 202 (4th Cir. 2006) ("[F]ederal courts are courts of limited jurisdiction and generally abstain from hearing child custody matters." (citing *Cole v. Cole*, 633 F.2d 1083, 1087 (4th Cir. 1980)).

In sum, the undersigned **FINDS** that because the relief Plaintiff requests would not redress his alleged injury, he does not have standing to pursue his claims, and this Court lacks jurisdiction over this action.

## IV.   RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that Defendant's motion to dismiss (ECF No. 24) be **GRANTED** and this action be **DISMISSED**.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days (filing of objections) and three (3) days (mailing) from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.   Extension of this time period may be granted by the presiding District Judge for good cause shown. Copies of any objections shall be provided to the opposing party or, if it is represented by counsel, to its counsel, and to Judge Copenhaver.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals.   28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and to transmit a copy to counsel of record.

ENTER:   November 10, 2020

Dwane L. Tinsley
United States Magistrate Judge