UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


S. U.,

        Plaintiff,

v.                                  Civil Action No. 2:20-cv-00450

MATTHEW WICKERT, in his official
capacity as State Registrar,

        Defendant.


MEMORANDUM OPINION AND ORDER


        Pending is the defendant's motion to dismiss the
plaintiff's complaint, filed in this court on August 24, 2020
(ECF No. 24).

        This action was previously referred to the Honorable
Dwane L. Tinsley, United States Magistrate Judge, for submission
to the court of his Proposed Findings and Recommendation
("PF&R") pursuant to 28 U.S.C. § 636(b)(1)(B).  See ECF No. 5.
On November 10, 2020, the Magistrate Judge entered his PF&R
recommending that the motion be granted and that the civil
action be dismissed from the court's docket.  See ECF No. 48.
The plaintiff timely filed his objections on November 16, 2020.
See ECF No. 49.

Upon an objection, the court reviews a PF&R de novo.
Specifically, "[t]he Federal Magistrates Act requires a district
court to 'make a de novo determination of <u>those portions</u> of the
[Magistrate Judge's] report or specified proposed findings or
recommendations to which objection is made.'" <u>Diamond v.</u>
<u>Colonial Life & Accident Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir.
2005) (emphasis in original) (quoting 28 U.S.C. § 636(b)(1)).

## I.    Background

Central to this motion is W. Va. Code § 16-5-10(e),
which states:

> For the purposes of birth registration, the woman who
> gives birth to the child is presumed to be the mother,
> unless otherwise specifically provided by state law or
> determined by a court of competent jurisdiction prior
> to the filing of the certificate of birth.

W. Va. Code. § 16-5-10(e).

The Magistrate Judge's summary of the plaintiff's
complaint, to which the plaintiff does not object, is as
follows:

> Plaintiff S.U. ("Plaintiff") brings this action
> pursuant to 42 U.S.C. § 1983 against Defendant in his
> official capacity as the West Virginia State
> Registrar, claiming that West Virginia Code § 16-5-
> 10(e), which provides generally that a woman who gives
> birth to a child is presumed to be the child's mother,
> violates the Fourteenth Amendment to the federal
> Constitution.  Plaintiff alleges that he is "the
> biological parent" of three minor children who "were
> conceived via in-vitro fertilization pursuant to a

2

gestational surrogacy contract." He avers that pursuant to § 16-5-10(e), the gestational surrogate was "identified" as the children's "legal mother" on their birth certificates, "and the surrogate then sought, and was granted, physical and legal custody of Plaintiff's children against his wishes."

According to Plaintiff, after the birth of the first child, he filed a petition in state circuit court "requesting a court order removing the gestational surrogate from the birth certificate and ordering the birthing hospital not to place the surrogate's name on the birth certificates of" the other two children, a set of twins the surrogate was carrying at the time. He alleges that the twins were born prematurely and he was not informed of the birth, and the children's birth certificates were filed before he was able to obtain the court order he requested. Plaintiff further alleges that the petition was later transferred to family court and converted into a petition for "custody allocation," and the family court "granted legal and physical custody of Plaintiff's biological children to their gestational surrogate . . . due to" § 16-5-10(e). He avers that he "has continued to fight for his children in state court," but "the State of West Virginia will not recognize his constitutional rights and relies simply upon . . . § 16-5-10(e)." He explains that he "requested the state circuit court to permit his wife . . . to adopt his children," but the court dismissed his petition "without a hearing" because it held that the adoption required the consent of the gestational surrogate as the children's legal mother.

Plaintiff brings both equal protection and substantive due process challenges to § 16-5-10(e). He requests that this Court declare the statute unconstitutional and enjoin Defendant from enforcing it "and any other laws that permit a gestational surrogate to be a legal parent in contrast to the biological parent's wishes." He further asks this Court to "order Defendant to amend the birth certificates of the three children to reflect only Plaintiff's name" and remove that of the gestational surrogate, to void the orders in the family court action awarding custody to the surrogate, and "give permission for law enforcement to assist Plaintiff

3

> with securing physical custody of his children, if
> necessary."  He also requests attorney's fees "for all
> court proceedings."

ECF No. 48 at 1-3 (internal citations and brackets omitted)

(quoting ECF No. 1).[1]

    The defendant filed the current motion to dismiss
arguing that the court lacked subject-matter jurisdiction for
various reasons and that the action was barred by the Rooker[2]-
Feldman[3] doctrine.  See ECF No. 25.  Although the Magistrate
Judge found the Rooker-Feldman doctrine largely inapplicable,
see ECF No. 48 at 4-5, he agreed that the court lacks subject-
matter jurisdiction but for reasons other than those advanced by
the defendant, see id. at 5 & n.2.

    The Magistrate Judge concluded that the plaintiff
lacks standing to pursue his claims in federal court.  See id.;
see also Buscemi v. Bell, 964 F.3d 252, 258 (4th Cir. 2020)
("[Courts] must assure [them]selves of subject matter
jurisdiction and may address standing sua sponte." (internal
citations omitted)).  The Magistrate Judge noted that the

---

[1] The memorandum decision issued by the West Virginia Supreme
Court of Appeals in S.U. v. C.J., No. 18-0566, 2019 WL 5692550
(W. Va. Nov. 4, 2019), is essential reading for understanding
the background of this case.

[2] Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923).

[3] D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983).

4

plaintiff alleges that the defendant injured him "by applying [§ 16-5-10(e)'s] presumption" – i.e., "that the woman who gives birth to a child should be listed as the child's mother on the birth certificate" – "to identify 'a gestational surrogate as the legal mother' of his children on their birth certificates," and thereby "depriv[ing] him of his rights 'to have the custody, control, and care of his own children . . . .'" EFC No. 48 at 6 (brackets omitted) (quoting ECF No. 1 at 1-2, 17-18).  In other words, the plaintiff's injury is, or derives from, the identification of the gestational surrogate as the mother on his children's birth certificates.

The Magistrate Judge concluded that the plaintiff's alleged injury is not redressable, for purposes of standing, by the forms of relief he seeks.  See id. at 6-8; see also Outdoor Amusement Bus. Assoc., Inc. v. Dep't of Homeland Sec., 983 F.3d 671, 680 (4th Cir. 2020) ("A plaintiff has the burden to 'demonstrate standing for each claim he seeks to press' and 'for each form of relief' sought." (quoting Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008)).  With respect to the plaintiff's request for an injunction preventing the defendant from enforcing § 16-5-10(e)'s presumption, the Magistrate Judge concluded that such relief could be only prospective, at most preventing the defendant from applying the presumption when

issuing future birth certificates but not resulting in any alteration to his children's already-issued birth certificates. <u>See</u> ECF No. 48 at 7.  With respect to the plaintiff's request that the court issue an order directing the defendant to amend his children's birth certificates to remove the gestational surrogate as the listed mother, the Magistrate Judge concluded that the plaintiff failed to identify any authority in West Virginia law permitting courts to order the specific amendment the plaintiff requests.  <u>See</u> <u>id.</u>  Finally, with respect to the plaintiff's request for declaratory relief, the Magistrate Judge concluded that, by itself, a request for declaratory relief is not sufficient to satisfy the redressability requirement for purposes of standing.  <u>See</u> ECF No. 48 at 7.  The Magistrate Judge accordingly recommended that the court grant the defendant's motion to dismiss and dismiss the action based on lack of standing.  <u>See</u> <u>id.</u> at 9.

The plaintiff objects to the Magistrate Judge's conclusion that his alleged injury is not redressable by the three forms of relief he seeks.[4]  <u>See</u> ECF No. 49.

---

[4] The Magistrate Judge also concluded that the court cannot provide the other forms of relief the plaintiff seeks and thus that they cannot satisfy the redressability requirement.  <u>See</u> ECF No. 48 at 8; ECF No. 1 at 19.  The plaintiff does not object to this conclusion and the court perceives no clear error in it.

## II.  Legal Standard

Federal district courts are courts of limited subject-matter jurisdiction, possessing "only the jurisdiction authorized them by the United States Constitution and by federal statute." United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2008). "[T]here is no presumption that the court has jurisdiction." Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 399 (4th Cir. 1999). Indeed, when the existence of subject matter jurisdiction is challenged in a case initiated in a federal district court, "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); see also Richmond, Fredericksburg, & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). If subject-matter jurisdiction is lacking, the claim must be dismissed. See Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

"The standing doctrine derives from 'the Constitution's limitation on Article III courts' power to adjudicate cases and controversies'" and thus "implicates the court's subject matter jurisdiction." South Carolina v. United States, 912 F.3d 720, 726 (4th Cr. 2019) (quoting Frank Krasner Enters. v. Montgomery Cty., 401 F.3d 230, 234 (4th Cir. 2005)). "To establish Article III standing, 'a plaintiff must show (1)

7

[he] has suffered an injury in fact . . . ; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" <u>Id.</u> (quoting <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 180-81 (2000)).

"[R]egarding redressability, a plaintiff must show that the court has the power to grant the plaintiff's requested relief, and that such relief would redress the plaintiff's injury." <u>Buscemi</u>, 964 F.3d at 259.  "An injury is redressable if it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" <u>Doe v. Va. Dep't of State Police</u>, 713 F.3d 745, 755 (4th Cir. 2013) (quoting <u>Friends of the Earth</u>, 528 U.S. at 561).

In assessing standing at the pleading stage, the court accepts as true allegations in the pleadings that are supported by adequate factual matter to render them plausible on their face.  <u>See</u> <u>Beck v. McDonald</u>, 848 F.3d 262, 270 (4th Cir. 2017) (citing <u>Iqbal</u>, 556 U.S. at 678).  "A plaintiff has the burden to 'demonstrate standing for each claim he seeks to press' and 'for each form of relief' sought." <u>Outdoor Amusement</u>, 983 F.3d at 680 (quoting <u>Davis</u>, 554 U.S. at 734).

III. Discussion

The court reviews <u>de novo</u> the plaintiff's objections with respect to the three forms relief on which he relies to satisfy the redressability requirement.  Because the court reaches a different conclusion than the Magistrate Judge with respect to one of these forms of relief, the court also assesses under the <u>Rooker</u>-<u>Feldman</u> doctrine the portions of the plaintiff's complaint that survive the standing analysis.

A.   Standing

   1.   <u>Prospective injunctive relief</u>

As the Magistrate Judge concluded, an injunction preventing the defendant from enforcing § 16-5-10(e)'s presumption would not redress the injury that the plaintiff alleges.  The injunction the plaintiff seeks could only operate prospectively, preventing the defendant from applying the statutory presumption to birth certificates issued in the future, but it cannot operate retrospectively to undo application of the presumption to the plaintiff's children's birth certificates, which have already been issued.  <u>See</u> <u>Swift & Co. v. United States</u>, 276 U.S. 311, 326 (1928) ("[A] suit for an injunction deals primarily, not with past violations, but with

9

threatened future ones[.]"). Thus, it could not ameliorate the harms he alleges, all of which flow from the prior application of the statutory presumption to his children's already-issued birth certificates. See <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 108 (1998) (relief that is "injunctive in nature" "cannot conceivably remedy any past wrong" and "is insufficient for purposes of Article III" standing unless the plaintiff "allege[s] a continuing violation or the imminence of a future violation").

Although the plaintiff appears to concede that the injunctive relief he requests could operate only prospectively, <u>see</u> ECF No. 49 at 4-5, he argues that it would nonetheless redress his injury by allowing him to have children in the future through surrogacy without a concern that the surrogate would be identified as the children's parent on a birth certificate. However, the plaintiff does not allege in his complaint any injury related to the issuance of birth certificates for children he might have in the future. <u>See Region 8 Forest Serv. Timber Purchasers Council v. Alcock</u>, 993 F.2d 800, 809 n.13 (11th Cir. 1993) (noting that injury necessary to support standing must be alleged in the complaint and may not be premised only on a plaintiff's argument in a brief); <u>accord</u> <u>Apotex Inc. v. Eisai Inc.</u>, No. 1:09CV477, 2010 WL

3420470, at *6 (M.D.N.C. Aug. 27, 2010); <u>see also</u> <u>Doe</u>, 713 F.3d at 755 (explaining that "[w]ith . . . a shifting characterization of [the plaintiff's] injury," between the complaint and the plaintiff's briefing, "'there can be no confidence of a real need to exercise the power of judicial review or that relief can be framed no broader than required by the precise facts to which the court's ruling would be applied'" and assessing the asserted injury "[a]s pled" (internal quotation marks and brackets omitted) (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 508 (1975))); <u>cf.</u> <u>Foodbuy, LLC v. Gregory Packaging, Inc.</u>, 987 F.3d 102, 116 (4th Cir. 2021) (declining to assess, for purposes of standing, form of relief advanced in a plaintiff's argument "because [the plaintiff] never asserted it was entitled to [that relief] in its [c]omplaint").

The plaintiff further argues that an injunction preventing the defendant from enforcing § 16-5-10(e)'s presumption would redress his injuries because it would also prevent the defendant from releasing the plaintiff's children's birth certificates to the surrogate and allowing the surrogate to obtain amendments to the birth certificates.  <u>See</u> ECF No. 49 at 5.  The court, however, fails to see how the injunction the plaintiff seeks – which would not operate to remove the surrogate's name from the already-issued birth certificates –

would preclude the defendant from providing those birth
certificates to the surrogate or amending those certificates at
the surrogate's request.  And, in any event, preventing the
defendant from undertaking these actions does not appear to
redress the injury the plaintiff alleges.

    2.    Order to amend birth certificates

        The Magistrate Judge also concluded that the plaintiff
has also failed to demonstrate that this court has the authority
to order the defendant to amend the plaintiff's three youngest
children's birth certificates.  See Buscemi, 964 F.3d at 259
("[A] plaintiff must show that the court has the power to grant
the plaintiff's requested relief . . . .").  The Magistrate
Judge determined that, under West Virginia law, courts have no
authority to order that birth certificates be amended except as
expressly provided for by statute or legislative rule.  See W.
Va. Code § 16-5-25(a) ("In order to protect the integrity and
accuracy of vital records, a [birth] certificate . . . may be
amended only in accordance with the provisions of this article
or legislative rule." (emphasis added)); In re G.M., No. 19-
0948, 2020 WL 3408589 (W. Va. June 18, 2020) (mem.) (concluding
that courts lack authority under § 16-5-25(a) to order
alteration of birth certificates in the absence of an express
statute or legislative rule granting authority to make specific

alteration).  And, as the Magistrate Judge explained, the
plaintiff has not identified any West Virginia statute or
legislative rule authorizing the amendment the plaintiff seeks.
See Outdoor Amusement, 983 F.3d at 680 (noting that the
plaintiff bears the burden to demonstrate standing for each form
of relief he seeks).

        In his objections, the plaintiff does not dispute that
West Virginia law does not permit the modification of a birth
certificate except where a specific modification is expressly
authorized by statute or legislative rule.  Nor does the
plaintiff identify a West Virginia statute or legislative rule
expressly authorizing the modification he seeks.[5]  Instead, he
argues that, when a state statute conflicts with the federal
Constitution, the latter must prevail and that the remedy for a
constitutional violation cannot be dependent on a state's
legislative inaction.  See ECF No. 49 at 6 (citing Obergefell v.
Hodges, 576 U.S. 644, 677 (2015) ("The dynamic of our

---

[5] The plaintiff briefly discusses W. Va. Code § 16-5-10(h)(5)(F),
see ECF No. 49 at 7, which contemplates that the State Registrar
will amend a birth certificate upon a court order rescinding an
affidavit of paternity, signed by a child's mother and a man to
be named as the father, that acknowledges that the man is the
child's father, see W. Va. Code § 16-5-10(h)(5)(F).  This
provision does not authorize the court to order the kind of
modification that the plaintiff seeks.

constitutional system is that individuals need not await legislative action before asserting a fundamental right.")).

The court agrees with the plaintiff.  Although, in an unpublished decision, the West Virginia Supreme Court of Appeals has ruled that West Virginia law does not authorize courts to order the modification of birth certificates except as provided by statute or legislative rule, see In re G.M., 2020 WL 3408589, the plaintiff seeks modification notwithstanding, rather than in accordance with, West Virginia law.  Federal courts exercising equity powers may, in appropriate circumstances, issue orders in the nature of mandamus, directing state officials, sued in their official capacities, to perform their duties in accordance with federal constitutional rights a plaintiff seeks to vindicate. See Lynn v. West, 134 F.3d 582, 587 (4th Cir. 1998) (explaining, in Eleventh-Amendment-immunity context, that federal courts are "not bar[red]" from granting a plaintiff's "official capacity claims for . . . injunctive relief" against a state official because "'[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law'" (quoting Green v. Mansour, 474 U.S. 64, 68 (1985))); see also id. at 587 (citing Ex parte Young, 209 U.S. 123 (1908)).  Here, the plaintiff asserts that the defendant, if ordered by a court to do so, has the authority

14

under state law to modify the birth certificates at issue, and the defendant has not disputed this assertion.[6]  Accordingly, the court concludes that it has the authority under federal law to order the defendant to amend the birth certificates at issue in order to comply with the Constitution.  The court therefore sustains the plaintiff's objection to the PF&R insofar as he argues that his asserted injury is redressable by an order directing the defendant to amend the plaintiff's children's birth certificates by removing the surrogate's name.

### 3.    Declaratory relief

The Magistrate Judge also concluded that the plaintiff's request for a declaration that § 16-5-10(e)'s presumption is unconstitutional cannot satisfy redressability for purposes of standing.  As the Magistrate Judge explained, "[b]y itself, a declaratory judgment cannot be the redress that satisfies the third standing prong.   Rather, plaintiffs must identify some further concrete relief that will likely result from the declaratory judgment."  Comite de Apoyo los

---

[6] Because the parties provide scant briefing on the issue, the court declines to determine conclusively the extent to which the defendant has ministerial or discretionary authority under West Virginia law to modify the birth certificates in the manner the plaintiff requests.  The court assumes for purposes of this motion that the defendant has the requisite authority.

Trabajadores Agricolas (CATA) v. U.S. Dep't of Labor, 955 F.2d
510, 513 (4th Cir. 1993).

In his objections, the plaintiff argues that, if the
court awarded the declaratory relief he seeks, he "could obtain
concrete relief in the State courts" by seeking, under W. Va. R.
Civ. P. 60, post-judgment relief from the rulings in the custody
litigation he pursued in state court, which, in turn, would
allow him to exercise his parental rights without obstruction
from the surrogate.  ECF No. 49 at 1-2; see S.U., 2019 WL
5692550.  The court concludes that the further relief the
plaintiff argues will result from the declaratory relief he
seeks here — in the form of future successful state-court
litigation and the resulting ability to exercise parental rights
unhinderedly — is too speculative to satisfy the redressability
requirement.  See Frost v. Sioux City, 920 F.3d 1158, 1162 n.1
(8th Cir. 2019) (noting that the plaintiff's argument that "a
declaratory judgment" would "open[] up avenues of future
litigation" was "too speculative"); see also Calderon v. Ashmus,
523 U.S. 740, 746-47 (1998) (concluding suit under Declaratory
Judgment Act does not meet Article III requirements if it is
merely an "attempt[] to gain a litigation advantage" in a future
case).

The plaintiff also points to several cases involving the constitutionality of other states' statutes similar to § 16-10-5(e).  See J.R. v. Utah, 261 F. Supp. 2d 1268 (D. Utah 2002); In re Roberto d.B., 923 A.2d 115 (Md. 2007); Soos v. Superior Ct., 897 P.2d 1356 (Ariz. Ct. App. 1994).  However, none of these cases address the kind of issues concerning redressability for purposes of Article III jurisdiction that arise in the circumstances of this case, and they are thus inapposite here.

B.   The Rooker-Feldman doctrine

The Fourth Circuit "has consistently treated the Rooker—Feldman doctrine as jurisdictional," so, like the Magistrate Judge, this court is "obliged to address it" at the outset of the case.  Smalley v. Shapiro & Burson, LLP, 526 F. App'x 231, 235 (4th Cir. 2013) (quoting Friedman's Inc. v. Dunlap, 290 F.3d 191, 195-96 (4th Cir. 2001)).  Unlike the Magistrate Judge, the court concludes that the doctrine applies to this case to the extent the plaintiff seeks an order directing the defendant to modify the plaintiff's children's birth certificates.  Before applying the doctrine, however, some additional discussion of the plaintiff's complaint and his previous litigation in the West Virginia courts is necessary.

1.   <u>The complaint</u>

The plaintiff's complaint expressly alleges that he
filed a petition in a West Virginia circuit court to "remove the
gestational surrogate from [one of his children's] birth
certificate" and to "order[] the birthing hospital not to place
the surrogate's name on the birth certificates of [two of his
other] children" who had not yet been born.  ECF No. 1 ¶ 21.
After the two children were born, the circuit court transferred
the petition to a West Virginia family court, which "held under
. . . § 16-5-10(e)[] [that] the gestational surrogate was a
legal parent" and "granted legal and physical custody of [the]
[p]laintiff's biological children to their gestational surrogate
all due to . . . § 16-5-10(e)."  <u>Id.</u> ¶¶ 26-27.  The plaintiff
alleges that "[t]hese acts" by the West Virginia courts
"violated [his] rights of parentage which are protected under
the [C]onstitution."  <u>Id.</u> ¶ 28.  He further alleges that,
although he "has continued to fight for his children in state
court," . . . West Virginia will not recognize [his]
constitutional rights and relies simply upon . . . § 16-5-
10(e)."  <u>Id.</u> ¶ 29.  For instance, when the plaintiff later
"requested the state circuit court to permit his wife, the
intended mother of his children, to adopt his children[,] [t]he
circuit court . . . , rel[ying] upon . . . § 16-5-10(e)[,]

stat[ed] that the gestation surrogate is the legal mother" and that her consent would be necessary for the adoption to occur. Id. ¶ 39.  The plaintiff asserts that this ruling resulted in a violation of his constitutional rights.  See id. ¶¶ 39-40, 44. Likewise, he asserts that West Virginia's "refus[al] to remove" the surrogate from her "legal parentage status" due to application of § 16-5-10(e) violates his constitutional rights. Id. ¶ 44.

In both Count I and Count II of his complaint, the plaintiff asserts that application of § 16-5-10(e) has violated his equal protection and substantive due process rights.  See id. ¶¶ 63-75.[7]  He further asserts that his constitutional rights are being irreparably injured by the defendant's enforcement of § 16-5-10(e) because it prevents him from obtaining custody of his children.  See id. ¶¶ 79-80.  For relief, the plaintiff requests, among other things, that the court "order [the]

---

[7] In Count III, the plaintiff asserts that the defendant, by "enforcing the terms of . . . § 16-5-10(e)," is depriving the plaintiff of his Fourteenth Amendment rights, "in violation of . . . § 1983."  Id. ¶ 77.  Section 1983 is not an independent source of substantive rights but is, instead, a vehicle for vindicating existing federal rights.  See Wiggins v. Queensberry, 222 F. Supp. 3d 490, 497 (E.D. Va. 2016).  The only federal rights the plaintiff identifies in his complaint are the equal protection and substantive due process rights asserted in Counts I and II, and, thus, Count III appears to be entirely duplicative of the other two Counts in the complaint.

[d]efendant to amend the birth certificates" of his three youngest children "to reflect only [his] name" and to "declare [that] all orders arising from [the action decided by the] family court[, which] was [transferred there after being] altered into a custody action due to [the] [d]efendant's enforcement of . . . § 16-5-10(e), are null and void."  Id. at 18-19 (Prayers for Relief 3 and 4).

### 2.   Actions brought in state court

The petition referred to in the plaintiff's complaint was filed on May 16, 2018, in Kanawha County Circuit Court and was thereafter transferred to the Mason County Family Court. See S.U., 2019 WL 5692550, at *1-2.  In the course of that litigation, the plaintiff "filed various motions relating to custody and parentage of the children, including motions to remove [the surrogate] from the three youngest children's birth certificates."  Id. at *2.  After a hearing, the Family court concluded that the surrogacy contract the plaintiff relied on was unenforceable and that the surrogate, despite having "no biological relationship to the three youngest children," "should remain on the children's birth certificates" under "the doctrine of psychological parent."  Id. at 3.  Following the hearing, the Family court "designated [the surrogate] as the primary

residential and custodial parent of the [plaintiff's] four minor children." Id. at *1.[8]

The plaintiff ultimately petitioned for appeal to the West Virginia Supreme Court of Appeals, which issued a memorandum decision on November 4, 2019. See id. Noting that § 16-5-10(e)'s presumption applies absent a court order entered prior to the issuance of the birth certificate and that the plaintiff had not obtained a court order prior to issuance of his three youngest children's birth certificates, the supreme court understood that the plaintiff sought "to force an adoption, remove [the surrogate] from the [two youngest children's] birth certificates, and take sole custody" of the three youngest children. Id. at 4. The supreme court rejected the plaintiff's arguments that the Family court erred by finding that the surrogate was more than merely a gestational surrogate and that the surrogacy contract was unenforceable. See id. Thus, the supreme court concluded that the plaintiff "failed to submit competent evidence to overcome the presumption set forth in . . . § 16-5-10(e) that 'the woman who gives birth to the child is presumed to be the mother.'" Id. (brackets omitted) (quoting W. Va. Code § 16-5-10(e)). Based on application of §

---

[8] The oldest of the four children is not a subject of this action.

Case 2:20-cv-00450   Document 64   Filed 03/26/21   Page 22 of 28 PageID #: 388

16-5-10(e), the supreme court concluded that the Family court's resort to the psychological parent doctrine was "wholly unnecessary." Id.  The supreme court expressly noted that the there was "no merit to [the plaintiff]'s argument that the family court erred in failing to remove [the surrogate]'s name from the three youngest children's birth certificates." Id. at *5 n.14.  Accordingly, the supreme court affirmed the Family court's decision.  Id. at *5.

In "the same month" that the supreme court issued its memorandum decision, the plaintiff filed an "'Emergency Petition to Disestablish Maternity of Gestational Surrogate,'" in Gilmer County Circuit Court.  S.U. v. C.J., No. 19-1181, 2021 WL 365824, at *1-2 (W. Va. Feb. 2, 2021).  In the petition, the plaintiff sought "to have [the surrogate] removed from the birth certificates of the parties' three youngest children and to have them returned to his custody." Id. at *2.  In a December 11, 2019 order, the circuit court dismissed the petition sua sponte, concluding that the petition was an attempt to overturn the prior decision of the supreme court and to re-litigate custody and birth-certificate issues, which the plaintiff was precluded from litigating under the doctrine of res judicata.  See id.

The plaintiff again filed a petition for appeal in the supreme court.  See id. at *1.  In a February 1, 2021 memorandum

decision, the supreme court agreed with the circuit court's determination that the plaintiff's petition was barred by <u>res judicata</u>.  <u>See</u> <u>id.</u> at *1-4.  In reaching this conclusion, the supreme court found the plaintiff's argument that his prior action had not involved a request to remove the surrogate's name from the birth certificates "disingenuous" because he had made "clear efforts" to do so in the prior action.  <u>Id.</u> at *2.  Indeed, the supreme court observed that "the ultimate issue being litigated in the two cases is [the surrogate]'s inclusion on the children's birth certificates."  <u>Id.</u> at *3.

### 3.  <u>Application of Rooker-Feldman</u>

The <u>Rooker-Feldman</u> doctrine applies if a case is (1) "brought by [a] state court loser[]" (2) who "complain[s] of injuries caused by state-court judgments" (3) that are "rendered before the [federal] district court proceedings commenced," (4) "and invit[es] district court review and rejection of those judgments."  <u>Davani v. Va. Dep't of Transp.</u>, 434 F.3d 712, 718 (4th Cir. 2006) (quoting <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 540 U.S. 280, 284 (2005)).

Here, the four <u>Rooker-Feldman</u> requirements are met. First, the current action is brought by a plaintiff who pursued

nearly identical claims in state court actions and lost.[9]
Second, the plaintiff complains that his injuries have been
caused in large part by the state courts' decisions to enforce §
16-5-10(e)'s presumption and thereby permit the surrogate to be
placed and remain on his three youngest children's birth
certificates.  See ECF No. 1 ¶¶ 25-28 (alleging that the Family
court's decision premised on application of § 16-5-10(e)
violated the plaintiff's constitutional rights); id. ¶ 29
(alleging that, in enforcing § 16-5-10(e), West Virginia refuses
to recognize the plaintiff's constitutional rights in state
court actions he has continued prosecuting); id. ¶¶ 39-40
(alleging state court's rejection of the plaintiff's wife's
adoption actions, premised on § 16-5-10(e), violates his
constitutional rights); id. ¶ 44 (alleging West Virginia's
refusal to remove surrogate from birth certificates violates the
plaintiff's constitutional rights); id. ¶¶ 63-75 (asserting the
West Virginia's enforcement of § 16-5-10(e) violates the
plaintiff's equal protection and due process rights).  Third,
the state courts' decisions in those actions were rendered
before the plaintiff commenced the current action in federal

---

[9] The court has reviewed the records from the two actions
litigated before the supreme court, as discussed above, and
notes that the plaintiff has argued before both the supreme
court and the lower state courts that application of § 16-5-
10(e)'s presumption violated his Fourteenth Amendment rights.

court.  Lastly, in this federal court action, the plaintiff
invites this court to review and reject the state courts'
decisions.  <u>See</u> ECF No. 1 at 19 (requesting that the court
"declare all orders arising from" the Family court litigation
"null and void"); <u>see also</u> <u>Exxon Mobil</u>, 544 U.S. at 284 (noting
that the plaintiffs in <u>Rooker</u> had "alleg[ed] that the adverse
state-court judgment was rendered in contravention of the
Constitution" and had "asked the federal court to declare it
'null and void'").

        Further, the court observes that an order directing
the defendant to remove the surrogate's name from the birth
certificates on the ground that application of § 16-5-10(e)'s
presumption violates the plaintiff's Fourteenth Amendment rights
would run afoul of the <u>Rooker</u>-<u>Feldman</u> doctrine.  Under the
doctrine, "'a party losing in state court is barred from seeking
what in substance would be appellate review of the state
judgment in a United States district court, based on the losing
party's claim that the state judgment itself violates the
loser's federal rights.'"  <u>Curley v. Adams Creek Assocs.</u>, 409 F.
App'x 678, 680 (4th Cir. 2011) (quoting <u>Johnson v. De Grandy</u>,
512 U.S. 997, 1005–06 (1994)).  Here, the plaintiff alleges that
the defendant (and the state, generally) continues refusing to
remove the surrogate from his children's birth certificates

because of the state courts' decisions to enforce § 16-5-10(e).
This claim is barred by Rooker-Feldman.  See Willner v. Frey,
243 F. App'x 744, 747 (4th Cir. 2007) ("If a third party's
actions are the product of a state court judgment, then a
plaintiff's challenge to those actions are in fact a challenge
to the judgment itself.'" (brackets omitted) (quoting McCormick
v. Braverman, 451 F.3d 382, 394 (6th Cir. 2006)); McKithen v.
Brown, 481 F.3d 89, 97 (2d Cir.2007) ("[A] federal suit
complains of injury from a state-court judgment, even if it
appears to complain only of a third party's actions, when the
third party's actions are produced by a state-court
judgment.").[10]

_____

[10] A review of the supreme court's docket reveals, in addition to
the two petitions for appeal discussed above, numerous actions
filed by the plaintiff, many relating to the core allegations in
the complaint the plaintiff filed in this matter.  The plaintiff
has pursued a similar action in another federal court as well.
See Roe v. Jenkins, No. 1:20-cv-140, 2021 WL 1026524 (N.D.W. Va.
March 17, 2021) (dismissing for lack of subject matter
jurisdiction the plaintiff's complaint seeking custody of his
children).  In these circumstances, the court may consider sua
sponte the preclusive effect the decisions of the West Virginia
courts have on the claims asserted in this action.  See
Perlmutter v. Varone, 645 F. App'x 249, 251 (4th Cir. 2016)
("While generally a defendant has the burden of raising res
judicata, we have recognized that sua sponte consideration is
appropriate in 'special circumstances.'" (quoting Clodfelter v.
Republic of Sudan, 720 F.3d 199, 209 (4th Cir. 2013))); see id.
(concluding sua sponte consideration was merited due to the
plaintiff's "ongoing failure to recognize the finality of the
state court orders," as evidenced by the many "state court[] . .
. hearings and . . . numerous related suits and appeals"
instigated by the plaintiff).

Accordingly, the court concludes that, to the extent the plaintiff otherwise has standing to seek the forms of relief asserted in his complaint, he is barred from asserting those forms of relief in this court pursuant to the Rooker-Feldman doctrine.

IV.  Conclusion

For the foregoing reasons, it ORDERED that:

1.  the plaintiff's objections to the PF&R (ECF No. 49) be, and hereby they are, sustained in part and overruled in part;

--------------------

Federal courts are required under the Full Faith and Credit Act, 28 U.S.C. § 1738, to "give the same preclusive effect to a state-court judgment as another court of that State would give." Exxon Mobil, 544 U.S. at 293.  To the extent the plaintiff's complaint in this action seeks an order requiring the surrogate's name to be removed from the plaintiff's children's birth certificates based on an alleged violation of his Fourteenth Amendment rights, the court concludes that such relief would be barred by West Virginia's doctrine of collateral estoppel.  See State v. Miller, 459 S.E.2d 114, 120 (W. Va. 1995) ("Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.").

2.    the Magistrate Judge's PF&R (ECF No. 48) be, and
      hereby it is, adopted by the court as modified
      herein;

3.    the defendant's motion to dismiss the plaintiff's
      complaint (ECF No. 24) be, and hereby it is,
      granted;

4.    all other pending motions (ECF Nos. 2, 9, 35, 39,
      41, 44, 47, 50, and 57) be, and hereby they are,
      denied as moot;[11] and

5.    this action be, and hereby it is, dismissed and
      stricken from the court's docket.

The Clerk is directed to transmit copies of this
memorandum opinion and order to the <u>pro se</u> plaintiff, all
counsel of record, any other unrepresented parties, and the
Magistrate Judge.

ENTER: March 26, 2021

John T. Copenhaver, Jr.
Senior United States District Judge

---

[11] By a separate order entered this day, the court has denied the
plaintiff's motion for sanctions pursuant to Fed. R. Civ. P.
56(h) (ECF No. 55) and the related motion by the defendant for
leave to file a surreply (ECF No. 60).